## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**Equal Employment Opportunity
Commission,**

        **Plaintiff,**

**-V-**
                                             **Case No. 2:02-cv-00591**
                                             **Judge Michael H. Watson**

**Overnite Transportation Company,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff brings this case under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117(a), asserting that defendant unlawfully discriminates against persons with seizure disorders in the hiring of lift truck operators at its terminals. This matter is before the Court on the parties' motions *in limine* (Docs. 29 and 65). Both sides seek to exclude the other side's engineer-expert on the risk or threat posed by a person with epilepsy operating a lift truck in the workplace.

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Id.* The current Rule 702 codifies the central holding of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993), that the district court serves as a "gatekeeper," ensuring that expert testimony is both relevant and reliable. *Daubert* identified a non-exhaustive list of four factors the trial court may employ in determining whether scientific testimony is reliable: (1) whether the theory has been tested; (2) whether it has been subject to peer review; (3) whether a technique has a potential rate of error; and (4) whether the theory is generally accepted within the scientific community. *Id.* at 592-94. The inquiry is flexible, and the district court is not required to adhere to the enumerated factors. *Id.* at 594; *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). In cases involving non-scientific expert testimony, the *Daubert* factors may be relevant, or reliability may instead hinge on the expert's personal knowledge or experience. *Kumho Tire*, 526 U.S. at 150; *Surles v. Greyhound Lines, Inc.,* 474 F.3d 288, 295 (6th Cir. 2007).

As the Advisory Committee Notes to Rule 702 indicate, exclusion of expert testimony should be the exception and not the rule, and the trial court's role as gatekeeper is not intended to replace the adversary system. *Id.* (citing *United States v. 14.28 Acres of Land Situated in Leflore County, Mississippi,* 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 595. With these principles in mind, the Court will proceed to examine the parties' motions.

Plaintiff moves to exclude the testimony of Frank Entwisle. Plaintiff principally argues that the Court must preclude Mr. Entwisle from testifying because he failed to

cite current versions of OHSA regulations which adopt the four-part "direct threat"
analysis set forth in EEOC regulations.  Plaintiff also contends Mr. Entwisle's opinion
rests on the flawed conclusions of defendant's medical expert, Michael D. Privitera,
M.D.

Mr. Entwisle is a degreed engineer.  He has considerable professional
experience studying lift truck safety issues.  He has studied the physical characteristics
and mechanical workings of lift trucks.  Mr. Entwisle has also been involved in the
preparation of materials to train lift truck operators.  He has had occasion to evaluate
whether an applicant with a medical impairment should operate a lift truck in an
industrial setting, and has studied an accident involving a medically impaired lift truck
operator.  After extensively studying lift truck accidents, Mr. Entwisle designed a
restraint system intended to protect the operator when the lift truck falls on its side.  In
preparing his report, Mr. Entwisle visited and personally observed defendant's facility.

Based on his knowledge and experience, Mr. Entwisle concludes in his report,
"[s]eizures such as those described in the June 2, 2003 Report of Michael D. Privitera,
M.D., would contribute to potentially serious hazards being presented both to a lift truck
operator and to co-workers in an Overnite Transportation Company workplace."  Dr.
Privitera opines that Jeffery Bowman has had absence seizures, which can be so subtle
that Mr. Bowman may not be aware he is having one.  "Absence seizures cause
transient alteration of awareness that typically lasts 3-5 seconds, but this is enough time
to cause danger to Mr. Bowman or co-workers."  Dr. Privitera Report at 2.

As defendant correctly points out, the fact that Mr. Entwisle's conclusion rests on
the medical opinion of Dr. Privitera is unremarkable, and does not constitute a basis for

exclusion. *See* Fed. R. Evid. 703; *Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 588 (7th Cir. 2000). In a similar vein, plaintiff's expert, Regis Worley, Jr., relies on Mr. Bowman's assertion to the effect that he experiences a prodrome before he has a seizure.

In his report, Mr. Entwisle cites OHSA regulations in support of his opinion. The regulations, however, are not necessary to his conclusion. Rather, based upon his specialized knowledge of forklifts, and his observations of defendant's facility, Mr. Entwisle assesses the degree of risk posed by lift truck operator who has absence seizures. The references to regulations are mere surplusage.

As for relevance, one of the four factors in the EEOC's "direct threat" regulation requires the employer to determine "the nature and severity of the potential harm." 29 CFR § 1630.2(r). Mr. Entwisle's opinion is directly relevant to this factor. Moreover, the Court concludes that Mr. Entwisle's testimony is reliable, in that his opinion is based upon his extensive background with lift trucks and his direct observation of the operation of lift trucks at defendant's facility. Very simply, defendant's lift trucks weigh about 7000 pounds. They can lift up to 8000 pounds six feet in the air. They move both non-hazardous and hazardous materials. It is not difficult to understand that if an operator were to lose control of a such a lift truck, the operator and co-workers would be at risk of serious injury or death. It could be argued that the principle is so simple that an expert is unnecessary, although the Court concludes an expert would assist the jury to thoroughly understand it. Lastly, the Court notes that plaintiff's own expert, Mr. Worley, expressly accepts Mr. Entwisle's conclusion "that potentially serious hazards would be presented if a lift truck operator had a seizure while operating that equipment." Worley Report at 4.

For the above reasons, the Court holds that Mr. Entwisle's testimony is both relevant and reliable. Accordingly, the Court denies plaintiff's motion *in limine*. The Court will next turn to defendant's motion to exclude the testimony of Mr. Worley.

Defendant's challenge both the relevance and reliability of Mr. Worley's testimony. Defendant argues Mr. Worley's opinion is not relevant because he never addresses "whether Bowman and Smith, individuals with only partially controlled seizure disorders, can operate a forklift at an Overnite terminal without posing an undue risk of harm to themselves or others." Motion *in limine* (Doc. 29) at 6. Defendant also contends Mr. Worley's testimony does not satisfy any of the four enumerated *Daubert* factors. Defendant maintains that Mr. Worley is not qualified to testify as an expert in this case because he lacks any prior experience with forklifts. Furthermore, defendant asserts Mr. Worley's opinion is based upon faulty assumptions.

Mr. Worley is a degreed engineer. The emphasis of his practice is automobile accident reconstruction. In his report, Mr. Worley summarizes his conclusions as follows:

> No significant risk of substantial harm exists when operating motorized equipment merely because the operator has a seizure disorder. Moreover, any risk that does exist may be further reduced when medications are used to manage the seizure disorder. From an engineering perspective, a person who is similar to either Mr. Bowman or Mr. Smith, each of whom has a seizure disorder that is partially controlled by medication, does not represent a significant risk of substantial harm when operating motorized equipment. Additionally, any risk that does exist appears to be less than that which exists for an employee who has a complete hearing loss or who is blind in one eye, risks that Overnite Transportation Company indicated are acceptable.

Worley Report at 1. As noted above, Mr. Worley accepts Mr. Entwisle's finding that an employee having a seizure while operating a lift truck presents potentially serious

hazards. Applying a straightforward mathematical formula, Mr. Worley estimated that if the employee had one seizure a year, the likelihood of the seizure would occur at work would be 23.7%. Nonetheless, Mr. Worley concluded that the risk of potential harm is *de minimus* based upon the imminence of the potential harm:

> We can allow our hypothetical employee to always have an advanced warning of a seizure due to an aura, prodrome, or other sensation. Thus, while a person with no notice of an impending seizure may find himself suddenly experiencing a seizure, our hypothetical person who has an aura, prodrome, or other advanced warning of a seizure can have time to disembark from the equipment or remove himself from a potentially hazardous situation, thereby virtually eliminating the specific risk occurring while operating the equipment.

Thus, Mr. Worley's opinion is based upon the assumption that the hypothetical employee has a reliable prodrome.

The fact that Mr. Worley testifies based on the characteristics of a hypothetical employee does not render his testimony irrelevant. The relevance of Mr. Worley's testimony is readily apparent.

The four enumerated *Daubert* factors provide little insight to the reliability of Mr. Worley's non-scientific testimony. Instead, the Court assesses reliability in this instance on the bases of Mr. Worley's knowledge and experience as an engineer familiar with how accidents happen, and his methodology. In this regard, Mr. Worley's apparent lack of prior experience with forklifts does not render his testimony unreliable because Mr. Worley essentially adopts Mr. Entwisle's conclusion that an employee having a seizure while operating a lift truck presents a significant risk of serious harm. While Mr. Entwisle's specialized knowledge of forklifts may be more helpful to the jury in

describing the precise risk, the risk is itself obvious.  Furthermore, the mathematical calculation Mr. Worley performed constitutes a reliable methodology.  Lastly, defendant's contentions about the assumptions underlying the calculation go to the weight and not the admissibility of Mr. Worley's testimony.

In sum, the Court finds that Mr. Worley's testimony is both relevant and reliable for purposes of admissibility under Rule 702.  The Court therefore denies defendant's motion to exclude it.

Based on the foregoing, the Court **DENIES** both parties' motions *in limine.*

The Clerk shall remove Doc. 29 and Doc. 65 from the Court's pending CJRA motions list.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**